IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN OSCAR PHILLIPS,

    Petitioner,                   2: 07 - cv - 2110 - JAM TJB

    vs.

ROBERT AYERS, JR., Warden et al.,

    Respondents.              ORDER, FINDINGS AND RECOMMENDATIONS

_____/

## I. INTRODUCTION

Petitioner is a state prisoner proceeding *pro se* with a Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a 2005 jury trial, Petitioner was convicted of assault with a deadly weapon by means to produce great bodily injury and battery with serious bodily injury. He received a sentence of three years imprisonment on the assault conviction along with three years imprisonment due to the enhancement of personally inflicting great bodily injury during the assault for a total sentence of six years imprisonment. The trial court stayed the sentence on the battery conviction.

Petitioner raises several claims in this federal habeas petition; specifically: (1) Petitioner's constitutional rights were violated when the trial court failed to *sua sponte* instruct the jury on defense's theory of mistake/accident ("Claim I"); (2) ineffective assistance of counsel

1

for failing to argue the difference between self-defense versus intentional infliction of harm ("Claim II"); (3) ineffective assistance of counsel for failing to argue the difference between accidental and misfortunate injury versus willful intent to commit injury ("Claim III"); (4) ineffective assistance of counsel for failing to diligently represent Petitioner at sentencing resulting in a harsher sentence ("Claim IV"); and (5) ineffective assistance of counsel for failing to request a jury instruction on mistake/accident ("Claim V"). Petitioner requests an evidentiary hearing on these Claims. For the following reasons, the request for an evidentiary hearing is denied and the Petition for writ of habeas corpus should be denied.

## II.  FACTUAL BACKGROUND[1]

> On December 1, 2003, defendant went to his mother-in-law's home to pick up his baby. Upon arrival, he found not only his wife and their infant, but also his wife's ex-husband, Haskell Allen, Sr., and two adolescent sons from that former marriage. Defendant became agitated as he looked for his child's clothes while Allen followed him throughout the home. A confrontation eventually occurred in front of the house, in which Allen was stabbed twice. Allen testified that defendant stabbed him without any provocation. Allen's sons testified that defendant initiated physical contact with their father, striking him twice. The older son testified that defendant and Allen stood facing each other on the front lawn, with defendant's wife and baby between them. The two men exchanged heated words. Without Allen having thrown a punch, defendant reached around his wife and stabbed Allen twice. Before joining Allen on the front lawn, defendant had entered the kitchen where steak knives were kept. The older son saw neither defendant nor his father holding a weapon until he glimpsed a blood-stained knife in defendant's hand after the fight. The younger son testified similarly except that he never saw the knife. The surgeon who treated Allen testified that one stab wound penetrated the kidney and that a second slashing type wound was found where his neck and back converge.
>
> Defendant testified that he drove to his mother-in-law's house to pick up his baby unaware that Allen would be present, and stressed that he would not have come if he had know [sic] Allen would be there. Allen had physically threatened him two years before at a child custody hearing. Defendant insisted that he "didn't come

---

[1] The factual background is taken from the California Court of Appeal, First Appellate District opinion dated August 9, 2006, and attached to Respondent's Ayers Answer at Exhibit B (hereinafter "Slip Op.").

2

there for any trouble" and that while he was searching for his baby's clothing, Allen yelled at him while his two sons laughed. Trailing defendant throughout the house, Allen taunted him. Eventually, the two of them were at the front of the house. Defendant was frightened and believed that Allen carried a gun although there was no demonstratable indication he possessed a weapon. With wife and baby between the two men, Allen assertedly "wrenched" around his ex-wife and attempted to stab defendant. Concerned for his wife and baby as well as himself, defendant grabbed Allen's hand and seized the knife. Defendant commanded Allen to "get off of [him]" as Allen continued trying to stab him. When Allen twice lunged towards defendant, he was injured.

Defendant testified that throughout the struggle he was acting in self-defense and that "basically [Allen] ran into [the knife]." The prosecutor asked if Allen "ran into the knife accidentally," to which defendant responded, "Well, I didn't move. I mean, I just stood like that there when he came at me." Defendant maintained that he was never fully aware that he had stabbed Allen because everything happened so quickly. Regarding the second knife wound to Allen's back, the prosecutor again asked whether Allen "ran into [the] knife accidentally." Defendant responded that he told Allen to "get off of [him]" and that Allen came at him, but that he did not stab him. During the struggle, defendant received no injuries.

In closing argument, the defense insisted that Allen attacked defendant with a knife and that defendant reacted defensively, resulting in Allen's two wounds. "Mr. Phillips, afraid for his life and safety, did what the law allows him to do, which is to protect himself and act in self defense." The prosecutor argued that defendant's story of taking the knife from Allen's hand without being cut, with Allen being inadvertently stabbed twice, was implausible and that the prosecution's evidence proved that defendant initiated the attack.

The jury was instructed concerning the elements of the assault charge . . . and the elements of battery with serious bodily injury . . . . Both crimes, as defined require the defendant to have acted "willfully and unlawfully." "Willfully" was defined both in accordance with CALJIC No. 1.20 and, as part of the definition of assault, to mean "that the person committing the act did so intentionally." The instructions for both crimes state explicitly that the use of force upon another "is not unlawful when done in lawful self-defense" which the prosecution has the burden of negating beyond a reasonable doubt. The defense requested several instructions defining self-defense, all of which the court gave as requested.

The court was not requested to give, and did not give, an

3

1  instruction on the defense of mistake or accident.

2  (Slip Op. at p. 2-5 (footnotes omitted).)

### III.  PROCEDURAL BACKGROUND

After sentencing, Petitioner appealed to the California Court of Appeal raising Claim I. On August 9, 2006, the California Court of Appeal affirmed the judgment in a written opinion. The California Supreme Court denied the petition for review on November 1, 2006 without a written opinion.

Petitioner filed a federal habeas petition on October 7, 2007.  On September 23, 2008, that habeas petition was dismissed as Petitioner had neither paid the filing fee nor filed an affidavit in support of a request to proceed *in forma pauperis*.  Petitioner was given thirty days to file an amended habeas petition.  Petitioner filed his first amended habeas petition with an application to proceed *in forma pauperis* on October 22, 2008.  However, that habeas petition was a "mixed" habeas petition and Petitioner was ordered to either:  (1) file a second amended habeas petition; (2) move for stay and abeyance; or (3) elect to proceed forward on his first amended habeas petition on his only exhausted claim.  On July 8, 2009, Petitioner moved for a stay and abeyance.  Subsequently, on August 17, 2009, Petitioner filed a second amended federal habeas petition.  In that second amended habeas petition, Petitioner indicated that all of his claims were now exhausted as the California Supreme Court denied relief on his previously unexhausted ineffective assistance of counsel claims on August 12, 2009.  Subsequently, Petitioner's motion for a stay and abeyance was denied as moot and the Respondent was ordered to answer the second amended habeas petition.  On May 10, 2010, Respondent answered the second amended habeas petition.  Respondent agreed that Petitioner had exhausted his state remedies with respect to all of the claims raised in his second amended federal habeas petition. (See Resp't's Answer at p. 3.)

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state

court can only be granted for violations of the Constitution or laws of the United States.  See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  See 28 U.S.C. 2254(d).

If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a *de novo* review of a petitioner's habeas claims.  See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  Additionally, if a state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law.  See Larson v. Palmateer, 515 F.3d 1057, 1062 (9th Cir. 2010).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer v. Andrande, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Id. (citations omitted).  Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may

not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

The first step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review."  See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  The state courts provided no reasoning to support the denial of Petitioner's ineffective assistance of counsel claims (Claims II-V).  Thus, the record on Claims II-V will be independently reviewed to determine whether habeas corpus relief is available.  See Larson, 515 F.3d at 1062.  However, the California Court of Appeal, First Appellate District provided a reasoned decision on Claim I.

## V.  JURISDICTION AND MOOTNESS

Jurisdiction must be established before reaching the merits of Petitioner's Claims. Petitioner filed a notice of change of address on July 26, 2010.  Petitioner indicated he was released from prison.  Even though Petitioner is no longer incarcerated, Petitioner was "in custody" at the time he filed his federal habeas petition.  This is all that the "in custody" provision of § 2254 requires.  See Spencer v. Kemma, 523 U.S. 1, 7 (1998) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968); Maleng v. Cook, 490 U.S. 488, 490-91) (1989) (per curiam)).

Furthermore, even though Petitioner has been released from prison, this does not moot his federal habeas petition under these circumstances.  In Spencer, the Supreme Court held that a

petitioner's release from custody did not offend Article III's "case or controversy" requirement so long as it appears that the petitioner could suffer adverse collateral consequences as a result of the conviction. 523 U.S. at 7-14. There is a presumption that Petitioner's criminal conviction carries with it collateral consequences. See, e.g., Chaker v. Crogan, 428 F.3d 1215, 1219 (9th Cir. 2005); Chacon v. Wood, 36 F.3d 1459, 1463 (9th Cir. 1994), overruled on other grounds by 28 U.S.C. § 2254(c). As the instant federal habeas petition is not moot, the merits of Petitioner's Claims can be analyzed.

VI. PETITIONER'S CLAIMS FOR REVIEW AND REQUEST FOR AN EVIDENTIARY HEARING

    A.  Claim I

In Claim I, Petitioner asserts that his constitutional rights were violated when the trial court did not *sua sponte* give jury instructions on the defense of mistake or accident. Specifically, Petitioner asserts that the trial court should have instructed the jury with CALJIC No. 4.45 which states: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show [no] [neither] [criminal intent [n]or purpose, [nor] [[criminal] negligence,] [he] [she] does not thereby commit a crime." The California Court of Appeal analyzed this Claim on the merits. In denying the Claim, the California Court of Appeal stated:

> "The trial court has a duty to instruct sua sponte regarding a defense ' "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case." [Citation.] [W]hen the trial court believes "there is substantial evidence that would support a defense inconsistent with that advanced by a defendant, the court should ascertain from the defendant whether he wishes instructions on the alternative theory."'" (People v. Gonzales (1999) 74 Cal.App.4th 382, 389, citing People v. Breverman (1998) 19 Cal.4th 142, 157, italics added by the Breverman court.)
>
> Here the defense did not rely explicitly on the theory of mistake or accident. These words were never uttered by defendant in his testimony or by defense counsel in his [sic] argument. Rather, the

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

theory of the defense was self-defense.  Nonetheless, defendant's testimony provided substantial evidence on which the jury might have found the defense to apply and the defense was not inconsistent with defendant's theory of the case.  Self-defense requires that a "defendant . . . reasonably believe in the need to defend" and the " 'fear must be of *imminent* danger to life or great bodily injury.'"  (People v. Humphrey (1996) 13 Cal.4th 1073, 1082.)  Thus, a jury might reject the theory of self-defense, not finding the defendant to have entertained such a reasonable belief, but nonetheless have found that the defendant failed to form the mental state necessary to have rendered his action criminal. (People v. Lara (1996) 44 Cal.App.4th 102, 110.)  On cross-examination, defendant declined to state that the stabbings were "accidental," but under the version of events that he described he was merely grabbing the knife from Allen and attempting to avoid being struck by him when the injuries occurred.  According to defendant's testimony, he made no attempt to stab Allen.  He testified that he did not even realize at the time that Allen had been stabbed.  Had the jury believed defendant's testimony, or felt that there was at least a reasonable doubt as to its accuracy, the defense would have been established.  Hence, the instruction should have been given even though it was not requested.  (People v. Gonzales, supra 74 Cal.App.4th at p. 389; People v. Tewksbury (1976) 15 Cal.3d 953, 963.)  At a minimum, the court should have inquired of defendant whether he wished such an instruction to be given. (People v. Breverman, supra 19 Cal.4th at p. 157.)

Nevertheless, there is no possibility in this case that the failure to give this additional instruction gave rise to any prejudice.  The instructions as given made clear several times over that defendant was guilty only if he willfully stabbed Allen – that is, if he did so intentionally, "with a willingness or purpose" to do so.  Such willfulness is the opposite of the misfortune or mistake to which CALJIC No. 4.45 refers.  By instructing the jury that it must be convinced beyond a reasonable doubt that defendant acted willfully, the court in effect told the jury that it must have no reasonable doubt that the stabbing was an accident.  Having found that defendant acted willfully, the jury could not possibly have found that the stabbing was accidental.  Moreover, although in the abstract it is possible to inflict an injury accidentally but not in self-defense, the jury's rejection of self-defense in this case necessarily reflects a rejection of the claim of accident or mistake.  The question of self-defense did not turn on an assessment of defendant's thinking or the reasonableness of his beliefs when the stabbing occurred, but on an evaluation of two conflicting versions of what happened.  According to defendant, Allen was the aggressor who produced the knife and initially attempted to stab defendant.  The prosecution suggested that defendant obtained the knife from the kitchen and attacked Allen.  By accepting the prosecution's version, and rejecting defendant's claim of self-defense, the jury necessarily found that the stabbing was not an

8

accident.

> Gonzales, supra 74 Cal.App.4th 382 does not compel a different conclusion. In Gonzales, the failure to instruct on mistake or accident was held to be prejudicial error although no such instruction had been requested. (Id. at p. 390.) In that case, however, the defense attorney had based his argument to the jury on the contention that the victim's injuries were caused accidentally when she was struck by a door as the defendant entered the bathroom. (Id. at p. 385.) There was no question of self-defense and no instruction given that provided structure to the defendant's argument. (Id. at p. 390.) Moreover, during deliberations the jury expressed confusion as to how the element of willful intent related to the claim that the injury was accidental and reached an impasse as to whether the defendant acted willfully. (Id. at pp. 388-390.) The judge refused to clarify the instructions, merely rereading some of them and advising the jury to use common sense. (Id. at p. 390.) The Court of Appeal held that in the face of this confusion the court did not fulfill its obligation to assist the jury by providing adequate instructions in response to its inquiry. (Id. at pp. 390-391.) Here, the court's instructions read as a whole correctly apprised the jury of the legal standards that applied to the charges against defendant, including the element of willfulness, and there is nothing in either the instructions or the course of deliberations that suggests the jury was confused in any respect.

(Slip Op. at p. 5-7.)

Claims based on instructional error under state law are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)). To receive federal habeas relief for an error in the jury instructions, Petitioner must show that the error so infected the entire trial that the resulting conviction violates due process.[2] See id. at 72; see also Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

---

[2] Petitioner alludes to equal protection and his right to be free from cruel and unusual punishment due to the failure of the trial court to *sua sponte* instruct the jury on mistake/accident. (See Pet'r's Second Am. Pet. at p. 4 ("I was denied my Constitutional Right to Due Process, my Constitutional Right to be Protected from Cruel and Unusual Punishment, and my Constitutional Right to be Equally Protected Under the Law, when the jury was not given instructions on the defense of Mistake or Accident, and which I relied upon as part of my defense.").) While this Claim is clearly within the auspices of a possible due process violation, Petitioner does not assert how his equal protection rights and right to be free from cruel and unusual punishment were violated when the trial court did not *sua sponte* instruct the jury on mistake/accident. The Claim

9

"Failure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable." See Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009), cert. denied, 130 S.Ct. 2103 (2010) (citing Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004)). In order to obtain federal habeas relief on this Claim, Petitioner "must show that the alleged instructional error had substantial and injurious effect or influence in determining the jury's verdict." Id. (internal quotation marks and citations omitted). "A substantial and injurious effect means a reasonable probability that the jury would have arrived at a different verdict had the instruction been given." Id. In analyzing whether the Petitioner has suffered prejudice, two factors are considered: "(1) the weight of the evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge." Id. (citing Beardslee, 358 F.3d at 578). In this case, the burden on Petitioner is especially heavy where the alleged error involves the failure to give an instruction. See id. (quoting Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006)).

As noted by the California Court of Appeal, Petitioner did not rely expressly on a theory of mistake or accident, but rather on a theory of self-defense. For example, Petitioner testified that he pulled the knife out of Allen's hand and that he was acting in self-defense. (See Reporter's Tr. at p. 194, 201.)[3] However, Petitioner also testified that he was trying to keep the victim off of him and that he did not think that he stabbed the victim because everything happened so fast. (See id. at p. 202-03.)

---

turns on whether Petitioner's due process rights were violated under the standard described infra. Cf. Estelle, 502 U.S. at 72 ("The only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.") (internal quotation marks and citations omitted); Hiivala v. Hood, 195 F.3d 1098, 1106 (9th Cir. 1999) ("[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion.") (citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996)).

[3] Respondent attached the Reporter's Transcript of the trial proceedings as Exhibit H to the Answer which was filed in this Court on May 11, 2010 (hereinafter referred to as "Reporter's Tr.").

10

While a mistake/accident jury instruction might have been proper under these circumstances, Petitioner is still not entitled to federal habeas relief as he has not shown prejudice. As noted by the Court of Appeal, this case turned on "an evaluation of two conflicting versions of what happened." (Slip Op. at p. 7.) The jury was presented with two competing theories: (1) the victim was the aggressor who initially possessed the knife and attempted to attack the Petitioner with it only to have Petitioner take the knife away from the victim; or (2) Petitioner had the knife the whole time and used it during the altercation with the victim. As part and parcel of Petitioner's description at trial of his use of self-defense during the altercation is where Petitioner's mistake/accident theory also arose. By finding Petitioner guilty of assault however, the jury obviously rejected Petitioner's testimony regarding as to what occurred during the altercation with the victim. Petitioner's theory of self-defense and purported theory of mistake/accident were not mutually exclusive as both theories would have required the jury to believe Petitioner's recitation of what transpired. By being instructed on self-defense, the jury clearly rejected Petitioner's recitation of the facts by finding him guilty. Furthermore, as noted by the California Court of Appeal, the jury was instructed regarding the willfulness/intent that was required to convict Petitioner.

Petitioner failed to show a "substantial and injurious effect" because there was not a reasonable probability that the jury would have arrived at a different verdict had the mistake/accident instruction been given. See Byrd, 566 F.3d at 860 (citation omitted). The California Court of Appeal ruling regarding the failure of the trial court to *sua sponte* instruct the jury on mistake/accident was not contrary to or an unreasonable application of clearly established federal law. The prosecution presented strong evidence through its witnesses' testimony that was contrary to Petitioner's overall testimony of the claimed events, particularly his theory of mistake/accident. For example, the victim testified that he did not have a knife in his hands and that he did not make any threatening motions towards Petitioner. (See Reporter's Tr. at p. 60-61.) Another witness testified that he never saw the victim with a knife and that Petitioner threw

11

"punches" at the victim.  (See id. at p. 94-96.)  Yet another eyewitness never saw the victim with a knife and saw Petitioner throw "punches" at the victim.  (See id. at p. 127-28.)  For the foregoing reasons, Petitioner is not entitled to federal habeas relief on this Claim.

B.  Claim II

In his second Claim, Petitioner alleges that counsel was ineffective because she was not diligent in her representation of Petitioner because she failed to properly assert the difference between self-defense and intentional infliction of harm.[4]  The Sixth Amendment guarantees effective assistance of counsel.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel.  First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court then must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  See id.

Second, a petitioner must affirmatively prove prejudice.  See id. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at

---

[4] All of Petitioner's ineffective assistance of counsel claims (Claims II-V) also assert that appellate counsel was ineffective.  Petitioner does not differentiate the reasons why appellate counsel was ineffective as opposed to trial counsel.  Thus, the analysis of Claims II-V regarding trial counsel as discussed infra applies with equal force to Petitioner's claims that appellate counsel was ineffective.

1 697).

2     Contrary to Petitioner's arguments, counsel argued the most substantial elements of the

3 case as it related to the difference between self-defense and intentional infliction of harm at trial.

4 Defense counsel elucidated Petitioner's self-defense argument at trial and in her argument to the

5 jury. Petitioner testified that he was acting in self-defense when the victim lunged at him.

6 During trial, the following colloquy took place between defense counsel and Petitioner on

7 redirect:

> [Defense Counsel]: When you saw him reach around your wife, did you form an intent to take that knife from him and use it against him?
> [Petitioner]: No, ma'am.
> [Defense Counsel]: If Mr. Allen Senior had not lunged at you after you took the knife from him, would you have used that knife?
> [Petitioner]: No ma'am.
> [Defense Counsel]: So after he lunged at you, you made a defensive move, correct?
> [Petitioner]: Yes, ma'am.
> [Defense Counsel]: Can you show me that again, please?
> [Petitioner]: When he lunged at me, I went like this. (Indicating). I said "Get off me: Because he was coming at me like this. (Indicating).
> [Defense Counsel]: And when you did that, did you made an additional movement of hitting him?
> [Petitioner]: No, ma'am, I just put my arm out like that.

17 (Reporter's Tr. at p. 208.) Later, during closing argument, defense counsel stated the following:

> Unfortunately, Haskell Senior would not leave him alone, and instead, he created a situation that was tense with the possibility of violence. And later, he tried to use violence against Mr. Phillips. Mr. Phillips, afraid for his life and his safety, did what the law allows him to do, which is to protect himself and act in self-defense.

22 (Id. at p. 255.) Counsel was diligent in arguing that the Petitioner was simply acting in self-

23 defense and that he should be acquitted. The record shows that counsel's performance did not

24 fall below an objective standard of reasonableness regarding Petitioner's claim that counsel

25 failed to articulate the differences between intentional infliction of harm and self-defense.

26     Furthermore, even if counsel's performance did fall below an objective standard of

reasonableness to satisfy the first prong of the Strickland standard, Petitioner would not have been prejudiced because the trial court adequately explained intent and self-defense during its charge to the jury. The trial court instructed the jury as follows:

> In order or prove an assault, each of the following elements must be proved: (1) a person willfully and unlawfully committed an act, which by it's nature, would probably and directly result in the application of physical force of another; (2) the person committing the act was aware of the fact that it would lead a reasonable person to realize that, as a direct, natural and probable result of this act, that physical force would be applied to another person; and (3) at the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another.
>
> The word "willfully" means the person committing the act did so intentionally. However, an assault does not require an attempt to cause any injury to another person or an actual awareness of the risk that the injury might occur to the other person. To constitute assault, it is not necessary that any actual injury is inflicted. However, if there is an injury inflicted, it may be considered by you in connection with other evidence in determining whether an assault was committed, and if so, the nature of the assault.
>
> The willful application of physical force upon the person of another is not unlawful when done in lawful self-defense. The People have the burden of proof to prove that the application of physical force was not in the lawful self-defense. If you have a reasonable doubt the application of physical force was unlawful, you've got to find the defendant not guilty.
>
> Okay, the next couple of instructions give you basically a summary of the laws of self defense, which is the defense in this case, or a defense, one of the defenses you should consider, okay.
>
> An assault with a fist does not justify the person being assaulted and using a deadly weapon in self defense unless that person believes, and a reasonable person in the same or similar circumstances would believe, that the assault is likely to inflict great bodily injury upon him.
>
> The right of self defense exists only as long as the real or apparent threatened danger continues to exist. When the danger ceases to appear to exist, the right to use force in self defense ends. The right of self defense ends when there is no longer any apparent danger or further violence on the part of the assailant. Thus, where a person is attacked under circumstances where he justifies the right of self defense, and thereafter, the person uses enough force upon the attacker as to render the attacker incapable of inflicting further injuries, the right of self defense and its use ends.

1   It is lawful for a person who is being assaulted to defend himself
    from attack if, as a reasonable person, he has grounds for believing
2   and does believe that bodily injury is about to be inflicted upon
    him.  In doing so, that person may use all force and means which
3   he believes to be reasonably necessary, and which would appear to
    be a reasonable person in the same or similar circumstances to be
4   necessary, to prevent the injury which appears to be imminent.

5   A person threatened with an attack justifies the exercise of the right
    of self defense, and in the exercise of the right of self defense, a
6   person may stand his ground and defend himself by the use of all
    force and means which would appear to be necessary to a
7   reasonable person in a similar situation and with similar
    knowledge, and a person may pursue his assailant until he has
8   secured himself from danger if that course likewise appears
    necessary. This law applies even though the assailed person might
9   more easily have gained safety by flight or by withdrawing from
    the scene.
10
    Evidence has been presented that on a prior occasion, the alleged
11  victim threatened the defendant.  If you find that this evidence is
    true, you may consider that evidence on the issues of whether the
12  defendant actually and reasonably believed his life or physical
    safety was in danger at the time of the commission of the alleged
13  crime.

14  In addition, a person whose life or safety has been previously
    threatened is justified in acting more quickly and taking harsher
15  measures for self-protection from assault by that person than a
    person who had not received threats from or previously been
16  assaulted by the same person.

17  Actual danger is not necessary to justify self defense.  If one is
    confronted by the appearance of danger which arouses in his mind,
18  as a reasonable person, an actual belief and fear that he is about to
    suffer bodily injury, and if a reasonable person, in a like situation,
19  seeing and knowing the same facts, would be justified in believing
    himself in like danger, and if that individual when so confronted
20  acts in self defense upon these appearances, and from that fear and
    actual beliefs, the person's right of self defense is the same,
21  whether the danger is real or merely apparent.

22  The right of self defense is not available to a person who seeks a
    quarrel with the intent to create a real or apparent necessity of
23  exercising self defense.

24  Now, in the crime charged in Count 1, 245(a)(1), assault with a
    deadly weapon or by force likely to produce great bodily injury, it
25  is Count 1, and the crime of 243(d), battery resulting in serious
    bodily injury, charged in Count 2, and the allegation that, within
26  the meaning of 12022.7, that the defendant personally inflicted

15

> great bodily injury on the victim, and the lesser crime of Penal Code section 242, battery, there must exist a union, a joint operation of aggregate conduct and general criminal intent.
>
> General criminal intent does not require an intent to violate the law. When a person intentionally does that which is the law declared to be the crime, he is acting with general criminal intent, even though he may not know that aggregate conduct is unlawful.

(Reporter's Tr. at p. 232-36.) As the above instructions illustrate, the trial court instructed the jury on self-defense and intent. Thus, even if counsel's purported lack of diligence was objectively unreasonable, the Strickland prejudice standard was not met as the jury was fully instructed on these two issues.

C. Claim III

Next, Petitioner alleges that counsel was ineffective for failing to be more diligent in discussing the differences between accident/misfortunate injury and willful intent to commit injury. As discussed in supra Part VI.A, Petitioner's theory of misfortunate injury/accident was dependent upon the jury agreeing with his testimony concerning the altercation with the victim. By rejecting the self-defense theory, the jury necessarily dismissed Petitioner's theory of the events that transpired between him and the victim and his corresponding theory of "misfortunate injury/accident." The two theories (self-defense and accident/misfortunate injury) were part of Petitioner's overall testimony of the claimed events and not mutually exclusive and/or divergent. The jury's verdict indicated that they declined to believe Petitioner's testimony, and instead believed the alternative theory presented by the prosecution that the Petitioner was the aggressor.

Petitioner fails to satisfy the Strickland prejudice prong in this Claim. He cannot show to a reasonable probability that the result of the proceeding would have been different if counsel had been more diligent in explaining the difference between misfortunate injury/accident and willful intent to commit injury. The prosecution presented strong evidence through its witnesses' testimony that was contrary to Petitioner's purported theory of mistake/accident. See supra Part VI.A. Therfore, Claim III does not warrant federal habeas relief.

16

D. Claim IV

*Pro se* pleadings are held to less stringent standards than more formal pleadings drafted by lawyers. See, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* habeas petition and any supporting submissions must be construed liberally and with tolerance by the reviewing court. See Brown v. Roe, 279 F.3d 742, 745 (9th Cir. 2002). Construing the Petition liberally, Petitioner alludes to the fact that counsel was ineffective at sentencing in failing to be more diligent in requesting a more lenient sentence.

At sentencing, defense counsel pleaded with the trial court to sentence Petitioner only to probation:

> I'm asking that the Court give Mr. Phillips an opportunity on probation.
>
> I understand that what occurred was a serious crime; however, I would point out to the Court that the Court did hear the trial. The testimony of the witnesses, I believe, would show that Mr. Phillips did not go to the house with an intention of having a confrontation with Mr. Allen. He did not know that he was going to be there. When he was at the house, he did not argue with Mr. Allen. That was testimony from Mr. Allen's own sons. There was no planning on the part of Mr. Phillips to attack or stab Mr. Allen.
>
> And I want the Court to know that this is not in Mr. Phillips' nature to go to someone's house and stab somebody there. Mr. Allen created a situation within the home that was very hostile, and Mr. Phillips feared for his life. And I understand that the jury found that to be an unreasonable fear, however, Mr. Phillips was in fear.
>
> I'm not going to argue about what the jury decided. That's beyond what's happening today. But I do want the Court to give Mr. Phillips an opportunity on probation. And to support my request, I would point out to the Court that he is a 50-year-old man who has a very limited criminal background. The more serious criminal history that he has would be from 30 years ago when he was a juvenile. He was honorably discharged from the juvenile court. He has five children that he takes care of, three of them are with him, sole custody. He has a toddler; he has an adult special-needs son. He supports them. There's no drug use; there's no alcohol use. He is a person that had – I guess, had he not gone to that house that morning, this would not have occurred. He would not have created something to make this occur on his own.

> I also point out that the event occurred September 1st, 2003. In the year and a half that it took for this case to go to trial, Mr. Phillips did not sustain any arrests, no convictions. There is no proof or any allegation that he had any contact, physical contact, face-to-face with the victim or that he created . . . a crime with the victim, so I don't believe that he is a threat – a future treat [sic] to the victim should he be placed on probation, and I would ask that the Court seriously consider placing him on probation.

(Resp't's Answer, Ex. I at p. 5-6.)

The United States Court of Appeals for the Ninth Circuit has concluded that "there is no clearly established federal law" regarding the standard for ineffective assistance of counsel at sentencing in non-capital cases. See Cooper-Smith v. Palmateer, 397 F.3d 1236, 1244 (9th Cir. 2005). "When the Supreme Court established the test for ineffective assistance of counsel claims in Strickland, the Court expressly declined to 'consider the role of counsel in ordinary sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance.'" Id. (quoting Strickland, 466 U.S. at 686). Thus, Petitioner is not entitled to federal habeas relief on this Claim.

Nevertheless, even if the Strickland standard applied to this Claim, Petitioner would still not be entitled to federal habeas relief. As illustrated above, defense counsel argued forcibly for Petitioner to receive a lenient probation sentence during the sentencing hearing. She noted several facts in Petitioner's favor to support her argument for a more lenient sentence. After reviewing the record, Petitioner's counsel's performance at sentencing did not fall below an objective standard of reasonableness. Thus, even if Strickland was applicable to this Claim, the Claim does not warrant federal habeas relief.

E.  Claim V

Next, Petitioner argues that counsel was ineffective for failing to request a jury instruction on mistake/accident. For similar reasons as discussed in supra Part VI.A, Petitioner does not satisfy the prejudice prong of the Strickland standard with respect to this ineffective assistance of counsel claim. The jury was presented with two competing theories of what

transpired between Petitioner and the victim. By rejecting the self-defense argument in finding Petitioner guilty of assault, the jury clearly rejected Petitioner's testimony regarding the altercation and found that Petitioner was the aggressor. Once again, the mistake/accident defense theory was part of the same narrative as Petitioner's self-defense theory of what transpired during the altercation. Furthermore, as noted previously, the jury was specifically instructed on the willfulness/intent required to convict Petitioner. Petitioner cannot show to a reasonable probability that the outcome of his case would have been different if counsel had requested a mistake/accident jury instruction. The prosecution presented strong evidence through its witnesses' testimony that was contrary to Petitioner's purported theory of mistake/accident. See supra Part VI.A. Petitioner is not entitled to federal habeas relief on this Claim.

### F. Request for an Evidentiary Hearing

Finally, Petitioner requests an evidentiary hearing. Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citations omitted). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

In this case, an evidentiary hearing is not warranted. Petitioner failed to demonstrate that he has a colorable claim for federal habeas relief for the reasons stated in supra Part VI.

### VII. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary hearing is DENIED.

IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of habeas corpus be

DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: October 5, 2010

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE